UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIDGETON LANDFILL, LLC<br><br>                              Plaintiff,<br><br>vs.<br><br>MALLINCKRODT LLC AND EVERZINC USA, INC.<br><br>                              Defendants. | Civil Action No. 1:19-mc-00540<br><br>Memorandum of Law in Support of Motion to Compel Production of Documents Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i) |

I.      INTRODUCTION

This Motion to Compel[1] derives from a CERCLA cost recovery action filed by Plaintiff Bridgeton Landfill, LLC against Defendants Mallinckrodt LLC and Everzinc USA, Inc. in the United States District Court for the Eastern District of Missouri.  In that lawsuit, Plaintiff seeks to recover some or all of the substantial response costs it has incurred, consistent with EPA's National Contingency Plan, to investigate and otherwise respond to hazardous substances at the West Lake Landfill Superfund Site in St. Louis, Missouri.  Publicly-available records reviewed to date show that a Citigroup, Inc. subsidiary dissolved in 2007 was liable under CERCLA for the Site (and another Superfund site in St. Louis County, Missouri) at the time Citigroup dissolved it.  This subpoena seeks the records necessary to determine what Citigroup, as the ultimate parent company, did with the assets, premises, employees and business of the subsidiary at the time it was dissolved.  (The Subpoena and Rider are attached hereto as Exhibit A.)

Specifically, United States Atomic Energy Commission records show Commercial Discount Corporation originally owned and arranged for the disposal of the hazardous substances that were ultimately disposed of at the West Lake Landfill Superfund Site in 1973.  Publicly-available records indicate the assets and business of the successor to Commercial Discount Corporation were probably distributed to a subsidiary of Citigroup.  But, publicly-available financial information only reveals so much.  For that reason, Plaintiff asked District Judge Ronnie White for permission to conduct limited early discovery aimed at locating and joining the

---

[1] **Local Rule 37.3(a) Statement**:  As required by the Local Rules, counsel for Bridgeton and Citigroup conducted a meet and confer telephone conference on April 17, 2019 at 2:00 p.m. to discuss the issues raised in this motion in a good faith effort to reach an amicable resolution of this dispute.  Present on the call were Allyson Cunningham of Lathrop Gage LLP for Bridgeton, and  Daniel Weinberger from Gibbons P.C. for Citigroup.  The same parties met and conferred again via telephone in early June.  Ultimately, the Parties were unable to reach a resolution, and Citigroup's counsel has not responded to Bridgeton's counsel's most recent correspondence seeking production of the documents addressed in this motion.

correct subsidiary of Citigroup in its CERCLA cost recovery lawsuit. Judge White granted Plaintiff's Motion for Early Discovery on January 2, 2019, and Plaintiff served Citigroup with a subpoena on January 7, 2019.

In May 2019, Plaintiff agreed to limit its requests to the most pertinent financial records related to what happened to the assets, premises, employees and business of Associates/Trans-National Leasing, Inc. upon and after its dissolution in 2007. Nevertheless, after eleven months, numerous extensions, two golden rule letters, and several telephone conferences, one of the largest banks in the world still refuses to identify or produce basic financial records for one of its subsidiaries, records that are, by all accounts, not that old. Plaintiff has lost patience because Citigroup refuses to confer, and so has District Judge Stephen R. Clark.[2] During the parties' most recent status conference on October 3, 2019, Judge Clark encouraged Plaintiff to aggressively pursue its discovery from Citigroup so the lawsuit before him can finally move forward, and directed Plaintiff to file this Motion at this time. As such, Plaintiff respectfully asks this Court to exercise its authority under Fed. R. Civ. P. 45(d)(2)(B)(i)[3] to compel Citigroup to produce the financial records showing what happened to the assets, premises, employees and business of Associates/Trans-National Leasing, Inc. upon and after its dissolution in 2007.

## II. CITIGROUP'S POTENTIAL CERCLA LIABILITY

The lawsuit pending in the U.S. District Court for the Eastern District of Missouri will determine liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") at the West Lake Landfill Superfund Site, a 200-acre, inactive,

---

[2] The underlying case was transferred to District Judge Clark on July 18, 2019.

[3] Alternately, the Court may transfer this motion to the issuing court—the Eastern District of Missouri—if Citigroup Inc. consents or if the court finds exceptional circumstances. Fed. R. Civ. P. 45(f); *Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*, 160 F. Supp. 3d 574, 579 (S.D.N.Y. 2015) (Rule 45(f) "permits transfer but does not require it.").

municipal solid waste landfill located near St. Louis, Missouri (the "Site") that is contaminated by Manhattan Project radiologically impacted material ("RIM"). The complete history of the Site is long and complicated, but based on its review of publicly-available documents, Plaintiff reasonably believes a subsidiary of Citigroup is the legal successor to the CERCLA liability of a potentially responsible party at the Site, Commercial Discount Corporation, and should, therefore, be a party to this litigation.

Commercial Discount Corporation ("CDC") owned, possessed and disposed of the very hazardous substances that came to be disposed of in the West Lake Landfill Site. In 1966, CDC financed the transaction whereby the United States government sold the radiological materials to Continental Mining and Milling Company ("CMMC"). (Trustee's Deed (Feb. 3, 1967), attached hereto as Exhibit B; Intermediate Action Form (Dec. 12, 1966), attached hereto as Exhibit C.) CMMC soon became insolvent. CDC foreclosed and acquired the materials at foreclosure. (*See* Exhibit B.) CDC obtained more than 100,000 tons of licensed material, an office building, three plant buildings and the property upon which the residues were stored.[4] In 1969, CDC sold the materials to Cotter Corporation ("Cotter"), relinquishing its ownership interest in the materials at that time. (Agreement (Aug. 7, 1969), attached hereto as Exhibit D.)

Citigroup acquired and ultimately controlled and dissolved CDC through the following chain of transactions. In 1975, Associates First Capital Corporation acquired Commercial Discount Corporation. (*Associates Corp. Unit to Buy Shares of Commercial Discount*, N.Y. Times, Aug. 2, 1975, at 43.) From the time of that acquisition in 1975 to 1993, Commercial Discount Corporation was a wholly-owned subsidiary of Associates First Capital Corporation. Then, on January 6, 1993, Commercial Discount Corporation was merged with and into

---

[4] The United States Atomic Energy Commission, on December 16, 1966, issued a source materials license (SMC-907) to Commercial Discount Corporation.

Associates Fleet Leasing of Madison, Inc. (Certificate of Merger, attached hereto as <u>Exhibit E</u>.) Immediately thereafter, Associates Fleet Leasing of Madison, Inc. changed its name to Associates/Trans-National Leasing, Inc. (*Id*.) On November 30, 2000, Citigroup Inc. completed its acquisition of the parent company, Associates First Capital Corporation. (Citigroup 10-K for the year ended Dec. 31, 2000, at 3, attached hereto as <u>Exhibit F</u>.) The acquisition was consummated through a merger of a subsidiary of Citigroup Inc. with and into Associates First Capital Corporation (with Associates First Capital Corporation as the surviving corporation). (*Id*.) After the acquisition, Associates First Capital Corporation was contributed to and became a wholly owned subsidiary of Citigroup. (*Id*.)

On December 19, 2007, Associates/Trans-National Leasing, Inc. was dissolved by Citigroup. (Certificate of Dissolution (Dec. 19, 2007), attached hereto as <u>Exhibit G</u>.) Plaintiff needs to discover what happened to the assets, premises, employees and business of Associates/Trans-National Leasing, Inc. upon and after dissolution because such financial information is not required to be made publicly available. An entity called CitiCapital Commercial Leasing Corporation (incorporated in Indiana) was the last known immediate parent of Associates/Trans-National Leasing, Inc. at the time of its dissolution. (*See* Exhibit 21.01 to Citigroup 10-K for the year ended Dec. 31, 2004, attached hereto as <u>Exhibit H</u>.)[5] On August 4, 2008, CitiCapital Commercial Leasing Corporation was merged into Citicorp Leasing, Inc., the surviving corporation. (Certificate of Merger (Aug. 4, 2008), attached hereto as <u>Exhibit I</u>.) Citicorp Leasing, Inc. is reportedly a Citigroup, Inc. subsidiary.

---

[5] This statement is based on Plaintiff's review of Exhibit 21.01 (Principal Subsidiaries) to Citigroup's 10-Ks from 2004 to 2007. Because the presentation of Citigroup's subsidiaries changed in 2005, changing from showing direct ownership to listing the subsidiaries in alphabetical order, this statement could be inaccurate. Again, discovery is needed to understand what happened to the assets, premises, employees and business of Associates/Trans-National Leasing, Inc. upon and after its dissolution. That information is not found in publicly-available financial records such as 10-Ks.

### III.     PLAINTIFF'S ATTEMPTS TO MEET AND CONFER WITH CITIGROUP

In its January 4, 2019 subpoena to Citigroup, Plaintiff issued thirty-two requests for documents, including two requests for the primary documents reflecting the status of the assets and any shareholder distributions after Associates/Trans-National Leasing, Inc.'s dissolution in 2007.  (Exhibit A, Request Nos. 19 and 22.)  After requesting a 30-day extension, on February 28, 2019, Citigroup produced a total of seven documents in response to all thirty-two requests. Several of the documents were publicly-available materials related to a different Superfund site in St. Louis County, Missouri, and others provided current information related to a different entity entirely, Associates First Capital Corporation.  None of the documents related to the dissolution of Associates/Trans-National Leasing, Inc. in 2007.

Plaintiff sent a Golden Rule letter to Citigroup on April 2, 2019 asking to meet and confer and seeking supplementation of Citigroup's response.  (A copy of the Golden Rule Letter is attached hereto as Exhibit J.)  Counsel for Plaintiff and Citigroup conducted a meet and confer telephone conference on April 17, 2019 to discuss Citigroup's objections and its plans to supplement its response.  During that conference, Plaintiff's counsel explained to Citigroup's counsel that it was most interested in the documents showing what happened to the assets of Associates/Trans-National Leasing, Inc. when that entity was dissolved in 2007.  Citigroup supplemented its response to Plaintiff's subpoena on May 6, 2019, but the produced documents again did not shed light on what happened to the assets of Associates/Trans-National Leasing, Inc. upon and after its dissolution in 2007.

Plaintiff sent another letter to Citigroup on May 16, 2019 outlining the remaining deficiencies in Citigroup's response and offering a deadline of Monday, May 24, 2019 to provide documents responsive to the four most pertinent requests at issue, 19-22.  (A copy of this letter is attached hereto as Exhibit K.)  In early June, counsel for the parties met and conferred by

telephone. After a month of exchanging emails, on July 9, 2019, Citigroup's counsel told Plaintiff's counsel that his client's tax department was looking for the pertinent records but his client would like to adopt a protective order to ensure the confidentiality of the information before producing the documents. Plaintiff agreed and, after receiving no draft protective order from Citigroup, counsel for Plaintiff provided a draft protective order for Citigroup's review on September 3, 2019. Plaintiff did not receive a response before the status conference with Judge Clark on October 3, 2019. Since then, Plaintiff's counsel has followed up with Citigroup's counsel about the proposed protective order and asked Citigroup to respond with substance to the disputed requests without court order. Those efforts failed.

### IV.  LEGAL STANDARD

Under Rule 45, a properly issued subpoena commanding production of documents, electronically stored information, or tangible things "requires the responding party to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). The responding party may timely serve objections to the subpoena under Rule 45(c)(2)(B). If the recipient of a subpoena raises objections rather than responding, at any time thereafter, "on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2)(B)(i). The moving party carries the burden of showing that the requested documents are discoverable within the meaning of Rule 26. *Cent. States, Se. & Sw. Areas Pension Fund v. King Dodge, Inc.*, No. 4:11MC00233 AGF, 2011 WL 2784118, at *2 (E.D. Mo. July 15, 2011).

Rule 26 permits parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" in the context of the importance of the discovery to the issues in the case, the value of the case, and the parties' relative access to the information. Fed. R. Civ. P. 26(b)(1). While courts are particularly

mindful of the expense and burden imposed on nonparties responding to Rule 45 subpoenas, discovery that is not easily obtained from a party and that is reasonably tailored to avoid imposing a burden on a nonparty may be compelled. *Prime Aid Pharmacy Corp. v. Express Scripts, Inc.*, No. 4:16-CV-1237 (CEJ), 2017 WL 3128917, at *1 (E.D. Mo. July 24, 2017).

V.   **ARGUMENT**

The documents requested in Request Nos. 19 and 22 of the subpoena to Citigroup are crucial to the issues in this case. Understanding what happened to the assets, premises, employees and business of Associates/Trans-National Leasing, Inc. upon and after its dissolution is necessary to determine any appropriate entity or entities with successor liability for the actions that Commercial Discount Corporation took to arrange for the disposal of hazardous substances in 1969. Because CitiCapital Commercial Leasing Corporation was the last known immediate parent of Associates/Trans-National Leasing, Inc., Citigroup can locate information related to the dissolution of it chooses or is ordered to do so. Also, because the dissolution occurred relatively recently, locating the records should not impose an undue burden or expense and any expense will certainly be proportional to the needs of the case.

The requests at issue specifically ask for production of the following.

Request No. 19:  Primary DOCUMENTS reflecting what happened to the assets of Associates/Trans-National Leasing, Inc. after its dissolution on December 19, 2007, including, but not limited to, any sales agreements or any documents reflecting the liquidation of such assets.

Request No. 22:  Primary DOCUMENTS reflecting any distributions to shareholders of Associates/Trans-National Leasing, Inc. after the dissolution of Associates/Trans-National Leasing, Inc. on December 19, 2007.

In its original response to the subpoena, Citigroup made numerous objections to each of these requests. Citigroup first incorporated improper general objections, and it also objected to the requests as overly broad, unduly burdensome, and seeking information not related to the

defendants named in the litigation and/or not relevant to any party's claims or defenses in the litigation and therefore imposing a burden that is disproportionate to the needs of the case. Citigroup further objected to the extent the requests required that Citigroup create or prepare a new document(s) in response to the requests.  Finally, Citigroup objected to the requests because it alleged they were vague and ambiguous, including as to what constitutes "primary DOCUMENTS" and the scope of the term "reflecting".  These objections were improper from the start—as requests for documentation of dissolution of one subsidiary from 2007 certainly do not impose an undue burden disproportionate to the needs of this case (EPA wants a $200 million remedial action) and the requested documents are directly relevant to the issues in the case—but Citigroup agreed in its response to produce any responsive documents in its custody and control irrespective of its objections.

   These requests were discussed at length during the telephonic meet and confer on April 17th and further outlined in the letters sent to Citigroup on April 2nd and May 16th.  Thereafter, in its supplemental production, Citigroup produced two documents that confirm the dissolution of Associates/Trans-National Leasing, Inc. in 2007 but that provide no asset information responsive to the requests.

   Understanding what happened to the assets, premises, employees and business of Associates/Trans-National Leasing, Inc. is crucial to identifying all parties liable under CERCLA at the West Lake Landfill Superfund Site.  Citigroup is in the best position to have access to information related to the dissolution and it is implausible that locating this information would pose an undue burden on an organization with so many available resources.  Outside of trying to protect its own interests, there is no reason Citigroup should fail to produce documents responsive to Request Nos. 19 and 22 of the subpoena.

## VI. CONCLUSION

For the reasons stated herein, Bridgeton respectfully requests that the Court order Citigroup to promptly produce the documents requested in Request Nos. 19 and 22 of the subpoena served on it, and for such other further relief the Court deems appropriate.

Dated: November 19, 2019                    LATHROP GAGE LLP

By: *S/ George T. Wu*
George T. Wu, Ph. D
155 North Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone:  312.920.3324
Telecopier:  312.920.3301
gtwu@lathropgage.com

William G. Beck (*pro hac vice forthcoming*)
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone:       (816) 292-2000
Telecopier:      (816) 292-2001
wbeck@lathropgage.com

Attorneys for Plaintiff
Bridgeton Landfill, LLC in Case No.
4:18-cv-01800 (E.D. Mo.)

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November 2019, a copy of the foregoing Memorandum of Law in Support of Motion to Compel Production of Documents, was filed with the Clerk of the United States District Court for the Southern District of New York via ECF, and a copy was also served electronically and by U.S. Mail on the following known counsel of record for Citigroup Inc.:

Daniel S. Weinberger
Gibbons P.C.
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701

Attorneys for Citigroup Inc.

By: *S/ George T. Wu*

George T. Wu, Ph.D.

An Attorney for Plaintiff
Bridgeton Landfill, LLC